**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Leonard Langston, Sr., individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | No. 07 CV 5965 |
| v. | ) ) | HONORABLE DAVID H. COAR |
| Rizza Chevrolet, Inc., an Illinois corporation, Joe Rizza Ford, Inc., an Illinois corporation, and Rizza Cadillac/Buick/Hummer, Inc., an Illinois corporation, | ) ) ) ) ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Leonard Langston, Sr. brings this action against Defendants Rizza Chevrolet, Inc., Joe Rizza Ford, Inc., and Rizza Cadillac/Buick/Hummer, Inc., for alleged violations of the Fair Credit Reporting Act ("FRCA"), 15 U.S.C. § 1681 *et seq.* (Count I), and the Illinois Consumer Fraud and Deceptive Practices Act ("CFA"), 815 ILCS 505/2 *et seq.* (Count II). Defendant Rizza Chevrolet brings an action against third party Defendant Joyce Sledge, Plaintiff's sister, alleging common law fraud. Before the Court now are five outstanding motions: Defendant Sledge's Motion to Dismiss Rizza Chevrolet's Third Party Complaint; Defendants Rizza Cadillac/Buick/Hummer's and Joe Rizza Ford's Motion for Summary Judgment; [all] Defendants' Motion for Summary Judgment; Plaintiff's Motion for Summary Judgment; and Plaintiff's Motion for Class Certification.

For the reasons stated below, (1) the motion to dismiss [64] is **DENIED**, (2) summary judgment [94] is **GRANTED** for all Defendants on Count II, (3) summary judgment [79] is **GRANTED** on Counts I and II for Defendants Rizza Cadillac/Buick/Hummer and Joe Rizza

Ford, (4) summary judgment [134] is **DENIED** on Count I, and (5) class certification [70] is **DENIED**.

## I.       JURISDICTION AND VENUE

Federal question jurisdiction exists under 27 U.S.C. § 1331 because Plaintiff asserts a claim under the FRCA, a federal statue.  Jurisdiction also exists under 15 U.S.C. § 1681p and under 15 U.S.C. § 1691e.  Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.  Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) as the acts and transactions giving rise to this lawsuit occurred in the district and because Defendants can be found, have agents, and transact substantial business within this district, and the interests of justice require maintenance of this action in this district.

## II.      BACKGROUND

Plaintiff Leonard Langston, Sr., resides in Cook County, Illinois.  Defendants Rizza Chevrolet, Inc., Joe Rizza Ford, Inc., and Rizza Cadillac/Buick/Hummer, Inc. are Illinois corporations doing business in Illinois, including Cook County.

On or about May 22, 2007, Joyce Sledge, Plaintiff's sister, visited Defendant Rizza Chevrolet.  Pl.'s Local Rule 56.1 Statement of Undisputed Material Facts in Support of His Mot. for Summ. J. ("SOF") ¶ 9.  Sledge spoke with Denise Beanland, an employee of Rizza Chevrolet, regarding the purchase of a new vehicle.  SOF ¶ 10.  With Sledge was her co-worker and friend, Robert Hunter.  Def.'s Resp. to Pl.'s Local 56.1 Statement of Undisputed Material Facts ("Def.'s SOF") ¶ 1.  On that day, Sledge filled out and signed a credit application authorizing Rizza Chevrolet to obtain her credit report.  However, that credit report, once obtained by Beanland, showed that Sledge did not possess the requisite level of creditworthiness

to secure financing with Rizza Chevrolet without a co-signer.  SOF ¶ 11; Def.'s SOF ¶ 6.  Sledge had filed for bankruptcy a few years prior.  Def.'s SOF ¶ 2.  Beanland told Sledge that if Sledge could find someone willing to act as her co-signer for the purchase of the vehicle, she should just "call her and come back" to Rizza Chevrolet. Def.'s SOF ¶ 8.

On or about May 26, 2007, Sledge returned to Rizza Chevrolet, this time speaking with employee Rocco Ruffolo because Beanland was occupied.  SOF ¶ 12-13; Def.'s SOF ¶ 11.  Ruffolo asked Sledge whether she had thought of someone who could co-sign for the vehicle.  Sledge Dep. 23:4-8 (May 28, 2008).  Sledge suggested her two brothers.  *Id.*  Sledge provided Ruffolo with personal information pertaining to Plaintiff, but not his Social Security number.  SOF ¶ 16-17.  It was Ruffolo's practice to enter a consumer's information into the computer that was connected with a credit reporting agency and submit a request to obtain a consumer credit report without the consumer's Social Security number.  SOF ¶ 26-27.  Using Rizza Chevrolet's credit reseller's software, Ruffolo obtained Plaintiff's consumer credit report.  SOF ¶ 18-19.  Ruffolo was able to access Plaintiff's credit report without his Social Security number due to a quirk of the software, which permitted access to credit reports "as long as [the person accessing the report] [entered] nine digits for a Social."  SOF ¶ 29; Ruffolo Dep. 21:20-22:7 (June 3, 2008).

Defendants did not have nor attempt to secure a signed credit application or any other form of permission from Plaintiff to access to his consumer credit report.  SOF ¶ 23.  Ruffolo testified, and Plaintiff disputes, that Sledge had represented to him that she had obtained Plaintiff's consent to access his credit report, and that he relied on this representation.  Ruffolo Dep. 21:23-22:2, 24:3-6.  Ruffolo told Sledge that Plaintiff's credit report was sufficient and that Plaintiff could be a co-signer for the purchase of the new vehicle. SOF ¶ 20; Def.'s SOF ¶ 23.

Ruffolo told Sledge that Plaintiff would have to come back to sign all the paperwork to finalize the purchase. Def.'s SOF ¶ 24. Ruffolo testified that Sledge told him she was authorized by Plaintiff to sign for the purchase on Plaintiff's behalf, but Ruffolo refused to go forward with the sale unless Sledge brought Plaintiff to the dealership. Ruffolo Dep. 18:13-22. Sledge then left the dealership. Def.'s SOF ¶ 26. Plaintiff was not present during this transaction. SOF ¶ 21.

Shortly after Sledge's second visit to Rizza Chevrolet, Plaintiff was informed by a letter from the credit reporting agency that his credit report had been accessed. Def.'s SOF ¶ 28. Plaintiff visited Rizza Chevrolet to complain that his credit report had been accessed, and Rizza Chevrolet then contacted the credit reporting agencies by letter to request that the inquiry by Rizza Chevrolet be removed from Plaintiff's credit report. Def.'s SOF ¶ 29-30. Plaintiff has failed to allege, plead, or introduce evidence of any actual damages attributable to Defendants' conduct. *See* Section IV.b, below.

At all relevant times, Defendants did not have any written policies or procedures regarding obtaining consumer credit reports. SOF ¶ 25. John DaMore, the general manager of Rizza Chevrolet, testified that Defendant Rizza Chevrolet had an "internal" (which the Court understands to mean unwritten) policy requiring a consumer to give permission before Rizza Chevrolet or its employees access that consumer's credit information. DaMore Dep. 40:21-41:3. Defendants contend that Ruffolo's actions contravened this internal policy. Def.'s SOF ¶ 22. Since accessing Plaintiff's credit report, Rizza Chevrolet has put in place procedures to limit access to consumer credit reports to managers only.[1] Def.'s SOF ¶ 31.

This relatively simple series of events has triggered an avalanche of litigation. First, on February 28, 2008, Rizza Chevrolet filed a third party complaint against Sledge, seeking

---

[1] The Court notes that this evidence is likely to be barred at trial by Fed. R. Evid. 407 if introduced for the purpose of proving culpable conduct.

damages resulting from her allegedly fraudulent behavior. Sledge moved on April 14, 2008, to dismiss the third party complaint.  Second, on May 7, 2008, Defendants Rizza Cadillac/Buick/Hummer and Joe Rizza Ford filed for summary judgment on both of Plaintiff's claims, arguing that Plaintiff failed to present evidence sufficient to create a genuine issue of material fact as to whether those defendants were involved in the alleged violations of the FCRA and the CFA. Third, on May 16, 2008, all Defendants filed a motion for summary judgment on both of Plaintiff's claims.  Fourth, on July 24, 2008, Plaintiff filed a motion for summary judgment on both of his claims. Finally, Plaintiff filed a motion for class certification on April 21, 2008.  Plaintiff filed a motion to amend his motion for class certification, which was denied by the Court on July 31, 2008. The remaining motions have not been resolved, and are the subject of this memorandum opinion and order.

### III.    LEGAL STANDARD

On a motion to dismiss for failure to state a claim upon which relief can be granted, the district court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff.  Fed. R. Civ. P. 12(b)(6).  The purpose of a 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case.  *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted).  A complaint should not be dismissed "unless it appears beyond all doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts (a "scintilla of evidence" is insufficient) demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 252; *see also Celotex*, 477 U.S. at 324. When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003).

## IV.    ANALYSIS

### a.    Defendant Sledge's Motion to Dismiss

Defendant Sledge moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Rizza Chevrolet's Third-Party Complaint. Sledge makes one argument for why the dismissal of the complaint is appropriate: an action seeking indemnification for liability founded on a federal statute can only be maintained when it is provided for in the federal statute or in federal common law, and that neither the FCRA nor federal common law provide for Rizza Chevrolet's right of indemnification. Sledge cites *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981) (right to contribution from third party defendants must be provided for in federal statute or in federal common law) and *Kudlicki v. MDMA, Inc.*, No. 05 CV 2589, 2006 WL 1308617, *3 (N.D. Ill. May 10, 2006) (extending the *Texas Industries* reasoning to right of indemnification) to support this argument.

Defendant Sledge's motion to dismiss misses the point. Rizza Chevrolet's Third Party Complaint does not seek indemnification or contribution from Sledge, despite Rizza Chevrolet's injudicious use of the term "indemnification." Generally, when two or more persons are or may be liable for the same harm and one of them discharges the liability of another in whole or in part by settlement or discharge of judgment, the person discharging the liability is entitled to recover indemnity in the amount paid to the plaintiff, plus reasonable legal expenses, under certain conditions, e.g. where there is an explicit contract for indemnity. Restatement (3rd) of Torts § 22(a). Rizza Chevrolet does not allege that Sledge is liable for the willful violation of the FCRA, but instead brings the Third Party Complaint as an action for fraud, an Illinois common law claim.

The elements of common law fraud are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement. *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482 (1996). In its Third Party Complaint, Rizza Chevrolet, Inc. alleges that Sledge sought to purchase a vehicle from Rizza Chevrolet, that Sledge falsely represented to Ruffolo that her brother, Plaintiff, was willing to co-sign with her purchase of a vehicle and that Plaintiff had consented to Rizza Chevrolet obtaining his credit report, that Ruffolo reasonably relied upon the representations made by Sledge, and that Ruffolo's reliance on Sledge's statements caused Rizza Chevrolet to incur damages. Rizza Chevrolet, Inc.'s Third Party Compl. ¶ 4-8. Based on these allegations, Rizza Chevrolet has properly pleaded an Illinois fraud claim and would be entitled to relief if its allegations were proven true. Therefore, Defendant Sledge's motion to dismiss is **DENIED**.

### b. Defendants Rizza Cadillac/Buick/Hummer and Joe Rizza Ford

Defendants Rizza Cadillac/Buick/Hummer and Joe Rizza Ford ("Defendants Cadillac and Ford") move for summary judgment against Plaintiff on both of Plaintiff's claims, arguing that they are entitled to judgment as a matter of law on the issue of whether they can be liable for the actions of Defendant Rizza Chevrolet. Plaintiff contends that the former two defendants are "alter egos" of the latter, and urges the Court to overcome its presumption of corporate separateness and to "pierce the corporate veil."

Piercing the corporate veil is not favored and in general, courts are reluctant to do so; accordingly, a party bringing a veil-piercing claim bears the burden of showing that the corporation is in fact a "dummy or sham" for another person or entity. *Judson Atkinson*, 529 *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 379 (7th Cir. 2008). Thus, at summary judgment, the moving party bears the burden of demonstrating that there are no genuine issues of material fact sufficient to overcome the presumption of corporate separateness. Fed. R. Civ. P. 56. Under Illinois law, the presumption of corporate separateness will be disregarded and the veil of limited liability pierced only when two requirements are met: (1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual or other corporation no longer exist; and second, circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice. *Sea-Land Services, Inc. v. Pepper Source*, 941 F.2d 519, 520 (7th Cir. 1991) (citations omitted). The Seventh Circuit has identified several nonexclusive factors for determining whether there is sufficient "unity of interest" between corporations or between a corporation and an individual to justify disregarding their separate identities: (1) the failure to maintain adequate corporate records or to comply with corporate formalities; (2) the

commingling of funds or assets; (3) undercapitalization; (4) one corporation treating the assets of another corporation as its own; (5) failure to issue stock; (6) nonpayment of dividends; (7) insolvency of the debtor corporation; (8) nonfunctioning of the other officers or directors; (9) diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; (10) failure to maintain arm's-length relationships among related entities; and (11) whether, in fact, the corporation is a mere facade for the operation of the dominant stockholders. *Id.* At 520-21 (citations omitted); *Judson Atkinson*, 529 F.3d at 379.

Plaintiff's theory appears to be that all three car dealerships were alter egos of each other and of their owners, Anthony and Joseph Rizza. To support this claim, Plaintiff points to several pieces of evidence. First, an umbrella organization called "Rizza Enterprises," apparently not a legal entity or corporation unto itself, enters into contracts on behalf of six Rizza-related car dealerships, including all three defendants; for example, Rizza Enterprises acts on behalf of all the dealerships to obtain group rate discounts on insurance premiums. Pl.'s Resp. to Defs. Local Rule 56.1 Statement of Material Facts ("Pl.'s Cadillac/Ford SOF") ¶ 1, 2. Second, the Defendants share employees, including the human resources coordinator, chief financial officer from Rizza Enterprises, as well as non-Rizza Enterprises employees such as Thomas Kailer, a Rizza Lincoln Mercury employee who was identified in Rizza Chevrolet's Answers to Interrogatories as Rizza Chevrolet's Operations Manager. *Id.* At ¶ 4-8, 12. The Rizza dealerships also share property, ¶ 9, refer to one another on their websites and on a collective website, ¶ 11, 15, refer customers to each other, ¶ 13, 21, hold Rizza-wide salesperson meetings, ¶ 20. Anthony and Joseph Rizza are the sole shareholders of Rizza Chevrolet and Rizza Cadillac/Buick/Hummer, Inc., and Joseph Rizza is the sole shareholder of Joe Rizza Ford, Inc. ¶ 24-25.

Defendants Cadillac and Ford argue that these facts, even if undisputed, would be insufficient for a finding that they had a "unity of interest" with Defendant Chevrolet.[2] The Court need not reach this issue, because Plaintiff cannot show that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice, the second prong of the veil-piercing analysis. Illinois courts will not pierce the corporate veil simply to allow a plaintiff to collect on its outstanding debt. *Sea-Land Servs., Inc. v. Pepper Source,* 941 F.2d 519, 522 (7th Cir.1991). Instead, Illinois courts will only find that piercing is proper where failure to do so would: (1) unfairly enrich one of the parties; (2) allow a parent corporation to escape responsibility where it had created a subsidiary's liabilities and was the cause of the subsidiary's inability to meet those liabilities; (3) allow former partners to ignore obligations; or (4) uphold a corporate arrangement to keep assets in a liability-free corporation while placing liabilities on an asset-free corporation. *Hystro Prods. v. MNP Corp.,* 18 F.3d 1384, 1390 (7th Cir.1994); *Firstar Bank, N.A. v. Faul Chevrolet, Inc.*, 249 F.Supp.2d 1029, 1042 (N.D. Ill. 2003).

Plaintiff has failed to offer a shred of evidence or argument that any of these unjust outcomes would result from a failure to pierce the corporate veil. Plaintiff does not argue or point to any evidence that any Defendant has been unjustly enriched, that Defendants Cadillac or Ford created Defendant Rizza Chevrolet's liabilities and was the cause of its inability to meet those obligations, that there are no former partners who would be allowed to ignore obligations absent a piercing of the corporate veil, or that there is a corporate arrangement to keep assets in a liability-free corporation while placing liabilities on an asset-free corporation. Having failed to establish that a failure to pierce the corporate veil will sanction fraud or injustice, Plaintiff has

---

[2] Defendants failed to file a statement of undisputed material facts pursuant to Northern District of Illinois Local Rule 56.1. While a failure to submit such a statement constitutes grounds for the denial of the summary judgment motion, the Court is not required to deny the motion on such draconian grounds. Local Rule 56.1

not created a genuine issue of material fact with respect to piercing Defendants' corporate veil. Accordingly, summary judgment on Counts I and II is **GRANTED** for Defendants Cadillac and Ford.

### c. FCRA (Count I)

In Count I, Plaintiff claims that Defendant Rizza Chevrolet incurred civil liability under the FCRA, 15 U.S.C. § 1681n, by willfully misusing or acquiring Plaintiff's credit report. Plaintiff seeks summary judgment on Count I and claims that Defendants either "willful[ly] *or* negligent[ly]" violated the FCRA.  Pl.'s Rule 56 Mot. for Summ. J. 4 (emphasis added). Defendants also seek summary judgment on Count I.

However. the section of the FCRA that allows a plaintiff to sue for negligent violations of the statute provides relief only if the plaintiff can show actual damages. 15 U.S.C. § 1681o. Plaintiffs who fail to allege or prove actual damages have no standing to sue under 15 U.S.C. § 1681o.  *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 665 (7th Cir. 2001); *Troy v. Home Run Inn, Inc.*, 2008 WL 1766526, *4 (N.D. Ill. 2008).  As Defendants point out, nowhere does Plaintiff *allege*, let alone offer evidence of, any actual damages.  None of the statements in Plaintiff's Amended Complaint or his Local Rule 56.1 Statements of Undisputed Material Facts can be construed as evidence of actual damages.  Plaintiff's attorneys have stated that Plaintiff has not suffered actual damages.  *See* Ex. 4 to Def.'s 56.1 SOF, Letter from Mark Belongia, dated April 29, 2008 ("Plaintiff has no actual damages, as he was notified of the wrongful conduct merely three (3) days after Rizza Chevrolet made the unauthorized inquiry to his credit file.") Accordingly, only Defendants' alleged willful violation the FCRA pursuant to 15 U.S.C. § 1681n is at issue in this motion.

The FCRA imposes civil liability on any "person" (which includes any corporation or other entity, 15 U.S.C. § 1681a(b)) who negligently, 15 U.S.C. § 1681o, or willfully, 15 U.S.C. § 1681n, violates any duty imposed under the statute. For either a negligent or willful violation of a duty under the FCRA, the person is liable for the consumer's "actual damages" and the costs of the action together with reasonable attorney's fees. 15 U.S.C. §§ 1681n, 1681o. When the violation is willful, punitive damages may be awarded.[3] 15 U.S.C. § 1681n(a)(2). The Court will first consider whether Rizza Chevrolet violated any provision of the FCRA, and then whether that violation was willful or negligent.

### 1. Firm Offers of Credit

Under the FCRA, a credit or insurance provider can obtain a consumer's credit information from a credit agency without the consumer's permission only if the provider is making a "firm offer of credit" to the consumer. 15 U.S.C. § 1681b(c)(1)(B)(i); *Perry v. First Nat. Bank*, 459 F.3d 816, 824 (7th Cir. 2006). Plaintiff contends that Rizza Chevrolet obtained his consumer credit report but did not make a "firm offer of credit" to him, and therefore violated this provision of the FCRA.

A "firm offer of credit" is "any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer except that the offer may be further conditioned . . . ." 15 U.S.C. § 1681a(l). In a typical "firm offer of credit"

---

[3] Defendants' primary argument for summary judgment on Count I is that they offered to settle the case at $1,500 plus costs and attorneys' fees, that § 1681n permits statutory damages only up to $1,000, and that a plaintiff loses standing to sue once a defendant offers to satisfy the plaintiff's entire demand. However, Defendants fail to consider that punitive damages are available under § 1681n, and that therefore their offer to settle did not necessarily exceed Plaintiff's maximum potential damages award.

situation, a company obtains lists of names and addresses that credit bureaus generate from their databases according to the stated criteria, and then sends letters offering credit to those meeting the criteria. *See, e.g., Murray v. New Cingular Wireless Servs., Inc.,* 523 F.3d 719, 721 (7th Cir.2008). Plaintiff first argues that because Rizza Chevrolet's alleged actions did not take this form, they cannot be construed as "firm offers of credit." However, the statutory language in 15 U.S.C. §§ 1681a(l) and 1681b(c)(1)(B)(i) does not exclude a definition of a "firm offer of credit" that would include situations such as where a creditor obtains a specific person's credit report for the purpose of offering him the opportunity to purchase a car, and then in fact offered to sell him that car.

Next, Plaintiff argues that Rizza Chevrolet's actions failed to constitute a "firm offer of credit" as the term has been interpreted by the Seventh Circuit. In determining whether the offer of credit comports with the statutory definition, a court must consider the *entire* offer and the effect of all the material conditions that comprise the credit product in question. If, after examining the entire context, the court determines that the "offer" was a guise for solicitation rather than a legitimate credit product, the communication cannot be considered a firm offer of credit. *Cole v. U.S. Capital*, 389 F.3d 719, 727-28 (7th Cir. 2004)). In *Cole,* the Seventh Circuit identified three factors supporting the appellant's argument that the defendant's solicitation was *not* a firm offer: 1) it was not clear that credit approval was guaranteed; 2) the precise rate of credit and other material terms were not included in the solicitation; and 3) the credit extended was of relatively little value.[4] 389 F.3d at 728.

First, Plaintiff argues that any offer that Rizza Chevrolet may have made nonetheless failed to contain the material terms required to be considered a "firm offer of credit."

---

[4] Plaintiff does not dispute that Ruffolo's statements, if construed as an offer to purchase a vehicle, would be one of "sufficient value."

Defendants do not dispute that Ruffolo's offer to Sledge regarding the opportunity to purchase a vehicle did not include any material terms, such as the type of credit offered or the interest rate at which it was being offered.

Second, Plaintiff disputes whether the offer was actually guaranteed, citing Defendants' language that Rizza Chevrolet was merely "*prepared* to make an offer" and had never actually made one. Pl.'s Reply 5. Defendants argue that the statements Ruffolo made to Sledge after he ran Plaintiff's credit reports were a guaranteed offer of credit because Rizza Chevrolet was prepared to sell Plaintiff the car and merely needed his presence to complete the paperwork.

In a related argument, Plaintiff also contends that Ruffolo's actions cannot be construed as an actual "offer." The FCRA does not define the term "offer," but in most cases dealing with "firm offers of credit," the offering party communicates the credit offer directly to the consumer. *See, e.g. New Cingular Wireless*, 523 F.3d at 719; *Cole*, 389 F.3d at 719. The Restatement (Second) of Contracts § 24 (1981) defines an offer as "the *manifestation* of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it" (emphasis added); *See generally Boomer v. AT & T Corp.*, 309 F.3d 404, 415 (7th Cir. 2002). Defendants respond that "based upon the information in [Plaintiff's] credit report, Rizza Chevrolet was prepared to make a firm offer of credit to Plaintiff and Sledge." D.'s Resp. to Pl.'s Mot. For Summ. J. 10.

The facts in this case complicate the determination of whether an actual offer was manifested or made. The parties do not identify—and the Court has been unable to find—cases addressing facts similar to those at hand, where the defendant to a FCRA claim contends that a third party fraudulently represented herself as having been authorized by the person whose credit report has been accessed to consent on his behalf. However, if the Court agreed with

Defendants' reasoning, the result would be absurd: Rizza Chevrolet's offer of credit to *Sledge*,

who was not actually authorized either to consent to Rizza Chevrolet's accessing of Plaintiff's

credit report or to accept offers of credit on his behalf, but who represented herself as authorized

to do both, does not become an offer of credit to *Plaintiff* by dint of Sledge's alleged subterfuge.

An offer made to a fraudulent third party is not an offer made to an intended offeree. If

anything, Sledge's conduct would be relevant to Defendants' culpability, as discussed in the

below, or relevant to Defendants' claim against Sledge as a third party defendant for fraud, but is

irrelevant to the issue of whether credit was ever offered to Plaintiff. Accordingly, the Court

holds that Rizza Chevrolet's actions did not constitute a "firm offer of credit" within the meaning

of 15 U.S.C. § 1681a(l).

### 2. Willfulness

A violation of the FCRA under 15 U.S.C. § 1681n must have been committed "willfully."

The Supreme Court held in *Safeco Insurance Co. v. Burr* that "willfulness" under 15 U.S.C. §

1681n can mean not only that the defendant *knowingly* violated the FCRA but also that such a

violation was merely *reckless*. -- U.S. --, 127 S.Ct. 2201, 2215 (2007). Recklessness is defined

as "an unjustifiably high risk of harm that is either known or so obvious that it should be known"

and a person subject to the FCRA does not act in reckless disregard of it

> unless the action is not only a violation under a reasonable reading of the statute's terms,
> but shows that the company ran a risk of violating the law substantially greater than the
> risk associated with a reading that was merely careless.

*Id.* As some district courts have pointed out, a determination of whether the FCRA violation was

*knowingly* committed would require the factfinder to determine a party's subjective state of

mind, and questions involving a party's state of mind are generally appropriately resolved by a

jury rather than on summary judgment. *See, e.g., Thibodeaux v. Rupers*, 196 F.Supp.2d 585, 592 (S.D. Ohio 2001); *Smith v. Bob Smith Chevrolet, Inc.*, 275 F.Supp.2d 808, 821 (W.D. Ky. 2003). However, the Court in *Safeco* emphasized that in the absence of evidence that a FCRA violation was done knowingly, a determination as to recklessness must be based on the objective perspective. *Murray v. Indymac Bank*, F.S.B., No. 04 C 7669, 2007 WL 2741650, *4 (N.D.Ill. Sept. 13, 2007); *New Cingular Wireless*, 523 F.3d at 725-726 (reckless disregard is an objective standard).

Although Ruffolo's statements to Sledge regarding his willingness to sell a vehicle to her and Plaintiff was not a "firm offer of credit" as defined by the FCRA, there remains a genuine issue of material fact as to whether Defendant Rizza Chevrolet's actions were willful. Plaintiff contends that Defendant Rizza Chevrolet acted in reckless disregard of the FCRA because it did not have written policies and procedures regarding how to obtain a consumer credit report in compliance with the FCRA's requirements, and because it did not train its employees on the matter. However, Defendant disputes both of these facts.[5] Most significantly, as discussed above, Defendant Rizza Chevrolet's general manager, John DaMore, testified that Rizza Chevrolet had unwritten policies requiring its employees to secure the consumer's consent before the report was run. Also significant is Ruffolo's testimony that Sledge repeatedly (and apparently fraudulently) represented to him that she had obtained Plaintiff's consent to have his credit report accessed, and that Ruffolo relied on this representation before conducting the search. Plaintiff disputes this fact. Based on these disputed facts, a jury could find that Rizza

---

[5] The Court notes that the deposition transcripts that Plaintiff cites as evidence of these facts do not actually support his contentions. They only demonstrate that two of Rizza Chevrolet's employees were not trained and were unaware of such policies, not that Rizza Chevrolet uniformly failed to train its employees or failed to enact such policies. Such incautious citations were, unfortunately, prevalent in Plaintiff's Local Rule 56.1 Statement of Facts.

Chevrolet's actions were not objectively reckless but instead merely careless. Accordingly, summary judgment as to Count I is **DENIED**.

### d. CFA (Count II)

Both parties seek summary judgment on Plaintiff's second claim. In Count II, Plaintiff alleges that Defendants violated Section 2 of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2, which provides, in pertinent part,

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

Any person who suffers actual damage as a result of a violation of the CFA committed by any other person may bring an action against such person. 815 ILCS 505/10a. Unlike an action brought by the Attorney General under the CFA, which does not require that "any person has in fact been misled, deceived or damaged," 815 ILCS 505/2, a private cause of action brought under section 10a(a) requires proof of "actual damage." *Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 149 (2002).

Thus, the elements of a claim under the CFA are: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair act; (3) the occurrence of the deceptive or unfair act during a course of conduct involving trade or commerce; and (4) actual damage to the plaintiff (5) proximately caused by the deception. *Id.* In determining whether a given course of conduct or act is unfair, the CFA mandates that "consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." 815 ILCS 505/2.

The United States Supreme Court in *Federal Trade Commission v. Sperry & Hutchinson Co.,* 405 U.S. 233 (1972), cited with approval the published statement of factors considered by the Federal Trade Commission in measuring unfairness. *Sperry,* 405 U.S. at 244 n. 5. These factors are (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers. *Id.*; *see also Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 417-18 (2002) (citing *Sperry*).

Plaintiff's argument is simply as follows: because Defendants' actions violated the FCRA, they offend public policy, and therefore are unfair within the meaning of the CFA. Plaintiff then concludes that Defendants' actions were immoral, unethical, oppressive, and unscrupulous. This argument is tautological and insufficient. First, as discussed above, a genuine issue of material fact exists as to whether Defendants have actually violated the FCRA, which voids Plaintiff's sole predicate for the appropriateness of summary judgment on Count II. Second, as discussed above, Plaintiff has failed to introduce evidence of any actual damages, let alone sufficient evidence to create a genuine dispute of material fact. Because it is undisputed that Plaintiff cannot produce evidence on this element of his claim, summary judgment on Count II is entered in favor of Defendants.

### e. Plaintiff's Motion for Class Certification

Plaintiff requests that the Court certify his action against Defendants as a class action, defining the class as "all persons with Illinois addresses to whom [sic] Defendants have accessed their consumer report without written permission or a permissible purpose, within two years preceding the filing of this action [on October 22, 2007]." Pl.'s Mot. for Class Cert. 1.

Plaintiff's Motion for Class Certification is denied because he fails to satisfy several of the requirements for class certification under Fed. R. Civ. P. 23. Under Rule 23(a), one or more members of a class may sue or be sued as representative parties on behalf of all members only if:

1) the class is so numerous that joinder of all members is impracticable;
2) there are questions of law or fact common to the class;
3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
4) the representative parties will fairly and adequately protect the interests of the class.

Simply satisfying the prerequisites under Rule 23(a) does not guarantee class certification. A class action may be maintained if Rule 23(a) is satisfied and if certification is appropriate under one of three bases described in Rule 23(b). Plaintiff argues only that his proposed class meets the requirements of Rule 23(b)(3), which states that a class action may be maintained if

> (3) the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

*Id.* (emphasis added).

First, Plaintiff bears the burden of demonstrating the numerosity requirement of a class action, and "mere speculation as to the number of parties involved is not sufficient to satisfy Rule 23(a)(1) . . . . The party supporting the class cannot rely on conclusory allegations that joinder is impractical or on speculation as to the size of the class in order to prove numerosity. *Roe v. Town of Highland*, 909 F.2d 1097, 1100 n.4 (7th Cir. 1990) (citations omitted). Plaintiff's estimate as to the class size is both conclusory and speculative. The closest he comes to specificity is when he estimates "the proposed class to be in the hundreds or thousands." Pl.'s Memo. of Law in Support of His Mot. for Class. Cert. 6. The only evidence that purportedly supports Plaintiff's estimate in fact does no such thing. Defendant Chevrolet has admitted that it accessed between 56,000 and 71,000 consumer credit reports in the two years

prior to December 31, 2007. Def. Chevrolet's Resp. to Request to Admit ¶13. This fact alone gives the Court insufficient information to evaluate the size of the potential class without resorting to speculation; Plaintiff cites no evidence that *any* of these consumer credit reports, let alone "hundreds or thousands," were accessed "without written permission or a permissible purpose."

Second, and more fatal to Plaintiff's motion, even where the moving party can satisfy the Rule 23(a) commonality requirement by demonstrating at least one question of law or fact common to the class, a class action will not be maintained under Rule 23(b)(3) unless the common questions *predominate* over questions affecting only individual class members. Fed. R. Civ. P. 23(b)(3); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 624 (1997) ("Even if Rule 23(a)'s commonality requirement may be satisfied . . . the predominance criterion is far more demanding.). As discussed above, summary judgment is entered against Plaintiff on his CFA claim and 15 U.S.C. § 1681o claim for the negligent violation of the FCRA, so the only remaining cause of action for which a class might be certified is Plaintiff's 15 U.S.C. § 1681n claim against Rizza Chevrolet for the willful violation of the FCRA. Also as discussed above, whether or not Rizza Chevrolet will be held liable for a *willful* violation of the FCRA is dependent on facts specific to this case: whether Rizza Chevrolet failed to implement a policy to safeguard against the unlawful accessing of credit reports, whether Sledge made fraudulent statements to Rizza Chevrolet, whether Rizza Chevrolet relied on those statements, and whether such reliance, if any, pushes Rizza Chevrolet's conduct to a level of liability above carelessness. Plaintiff's proposed class includes all Illinois residents whose consumer reports Defendants accessed "without written permission or a permissible purpose," which encompasses a far greater set of factual possibilities than the matter at hand. In such a class action, the Court would be

forced to examine each class member's fact situation for evidence of Defendants' willfulness—the crucial inquiry—and the questions of law and fact common to the class therefore cannot be said to predominate. *See Nagel v. ADM Investor Services, Inc.*, 217 F.3d 436, 439 (7th Cir. 2000) (in lawsuits involving plaintiff-specific allegations of fraud, issues common to all the class members were not likely to predominate over issues peculiar to specific members). Accordingly, Plaintiff's Motion for Class Certification is **DENIED.**

### V.      CONCLUSION

For the foregoing reasons, (1) Defendant Sledge's Motion to Dismiss [64] is **DENIED**, (2) summary judgment [79] is **GRANTED** for Defendants Rizza Cadillac/Buick/Hummer and Joe Rizza Ford on both of Plaintiff's claims, (3) summary judgment [94] is **GRANTED** for all Defendants on Count II, (4) summary judgment [134] is **DENIED** on Count I, and (5) class certification [70] is **DENIED**.

Enter:

/s/ David H. Coar

David H. Coar

United States District Judge

**Dated:** November 24, 2008